UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| AMY KNAPP,<br><br>                Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,<br><br>                Defendant. | Case No. 22-cv-10063<br>Honorable Paul D. Borman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 13, 16)**

**I.    Introduction**

Plaintiff Amy Knapp appeals the final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). ECF No. 13; ECF No. 16. After review of the record, the Court **RECOMMENDS** that:

- Knapp's motion (ECF No. 13) be **DENIED**;
- the Commissioner's motion (ECF No. 16) be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

II.   **Background**

   A.   **Knapp's Background and Disability Application**

Born in August 1979, Knapp was 39 years old when she applied for DIB and SSI in April 2019, with an alleged disability onset date of April 2019.  ECF No. 9-2, PageID.101, 110.  She had past relevant work as a home attendant, data entry clerk, tax preparer, demonstrator, and receptionist.  *Id.* at PageID.110.  Knapp claimed disability from a bulging disc in her spine, degenerative disc disease, obesity, bipolar disorder, depression, Type 2 diabetes, hypothyroid disease, and high blood pressure.  ECF No. 9-6, PageID.760-761.

After a hearing, during which Knapp and a vocational expert (VE) testified, the ALJ found Knapp not disabled.  ECF No. 9-2, PageID.101, 112.  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  *Id.* at PageID.30.  Knapp timely filed for judicial review.  ECF No. 1.

   B. **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c).

3

the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Knapp was not disabled. At the first step, he found that Knapp had not engaged in substantial gainful activity since the alleged onset date of April 1, 2019. ECF No. 9-2, PageID.103. At the second step, he found that Knapp had the severe impairments of degenerative disc disease, major depressive disorder, and adjustment disorder with mixed anxiety with depressed mood. *Id.* at PageID.104. Next, the ALJ concluded that none of Knapp's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*

Between the third and fourth steps, the ALJ found that Knapp had the RFC to perform sedentary work,[2] except that she could only "occasionally climb ramps or stairs, and must avoid all exposure to hazards. She can perform simple, routine tasks, in work that has only occasional changes in the work setting, and that involves only occasional interaction with others." *Id.* at PageID.106. At step four, the ALJ found that Knapp cannot perform

---

[2] Sedentary work involves lifting or carrying no more than ten pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; standing or walking for two hours out of an eight-hour workday; and sitting for six hours out of an eight-hour workday. 20 C.F.R. § 416.967(a); Social Security Regulation (SSR) 83-10.

any past relevant work. *Id.* at PageID.110. At the final step, after considering Knapp's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs in significant numbers that Knapp could perform, including positions as a hand packer, inspector, and office helper. *Id.* at PageID.110-111.

## III. Analysis

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence[3] and conformed with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up). The substantial-evidence standard does not permit the Court to independently

---

[3] Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

Knapp argues that the Court should reverse the ALJ's decision or remand this matter because (1) the RFC is not supported by substantial evidence and (2) the ALJ did not give enough weight to an occupational therapist's RFC opinion. ECF No. 13, PageID.2283-2298.[4] The Court disagrees and recommends the ALJ's decision be affirmed.

## B.

Knapp contends that the RFC is not supported by substantial evidence, as it does not account for her inability to work longer than six hours and nine minutes, need to alternate sitting and standing,

---

[4] Knapp challenges the ALJ's evaluation of her physical impairments but not her mental impairments.

manipulative limitations, and difficulty moving her neck. ECF No. 13, PageID.2292-2298. She cites her subjective complaints of pain; medical records showing that she had a limited range of motion, spinal tenderness, and motor weakness; and an occupational therapist's RFC opinion. *Id.*

In addressing these arguments, the Court is mindful that it lacks the authority to independently weigh the evidence. *See Hatmaker*, 965 F. Supp. 2d at 930; *Cutlip*, 25 F.3d at 286. In the same vein, "it is the ALJ's place, and not the reviewing courts, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (cleaned up). Knapp's arguments about how the ALJ evaluated the evidence conflict with this Court's limited role. None of her arguments suggest that the ALJ abused his wide discretion.

### 1.

To determine Knapp's RFC, the ALJ considered imaging, objective examination findings, treatment records, surgical history, and Knapp's subjective complaints. ECF No. 9-2, PageID.106-110. Knapp stated that she must rest during the day because she gets worn out and that she cannot sit or stand for longer than 10 to 15 minutes. ECF No. 9-2, PageID.125-126; ECF No. 9-6, PageID.1006, 1011. She also reported that

7

she could not use her hands to grip and had neck pain that radiated into her shoulders, arms, and hands. *Id.*

The ALJ found that Knapp's "subjective complaints greatly exceeded the objective findings in the medical evidence or record." *Id.* at PageID.108. He summarized Knapp's medical history, which showed that she was doing better after three surgeries. *Id.* at PageID.107-108. Those records showed that she had a steady, unassisted gait and that she was provided a walker only for temporary post-surgical use. *Id.* at PageID.108. The ALJ also noted that objective examinations showed that Knapp moved her extremities with full strength. *Id.* The ALJ's reasoning and conclusions are supported by substantial evidence.

In April 2019, Knapp began complaining of neck and lower back pain that radiated into her arms and legs, and her primary care provider Jammie Pierson, FNP, noted that musculoskeletal examination was limited because of pain and decreased range of motion in her spine. ECF No. 9-10, PageID.1134-1137, 1055. April 2019 imaging of the lumbar spine showed degenerative disc disease and facet arthropathy with degenerative retrolisthesis at L4-L5, and other mild to moderate degenerative changes.

*Id.* at PageID.1122-1124.  And an August 2019 cervical spine MRI showed disc disease, arthrosis, and herniation at C5-C6.  *Id.* at PageID.1245.[5]

Knapp was treated at a pain clinic with lumbar facet blocks and epidural steroid injections, but they offered no relief as Knapp complained of worsening symptoms.  ECF No. 9-14, PageID.1418, 1424, 1426, 1434.  Neurosurgeon Dali Yin, M.D., recommended surgery, and Knapp had an anterior cervical discectomy at C3-C4 and C5-C6 in October 2019.  *Id.* at PageID.1755-1757; ECF No. 9-11, PageID.1371.  During a follow-up appointment, Dr. Yin stated that surgery went well and that Knapp's neck pain and weakness in her arms required more time to improve.  ECF No. 9-11, PageID.1411-1413.  He told Knapp to return for another visit to discuss her concerns about lumbar pain.  *Id.*

In early 2020, Knapp reported continued neck and lower back pain, and her providers observed limited range of motion, tenderness, and decreased muscle strength.  ECF No. 9-13, PageID.1608-1609, 1613-1614, 1622; ECF No. 9-16, PageID.1933-1934.  As the ALJ noted, primary care records from 2020 described Knapp's "requests for pain medication

---

[5] Although not discussed by the ALJ, imaging studies of Knapp's lumbar and cervical spine throughout the relevant period show only mild to moderate degenerative changes.   ECF No. 9-3, PageID.238-240; ECF No. 9-4, PageID.363-364; ECF No. 9-5, PageID.600; ECF No. 9-14, PageID.1748-1749; ECF No. 9-16, PageID.1913.

9

and multiple recommendations and referrals for [Knapp] to treat with pain management." ECF No. 9-2, PageID.107 (cleaned up). Those records show that Knapp failed to comply with scheduling appointments with a pain clinic.

In April 2020, Knapp requested a referral to a new pain clinic because her current clinic would not consider prescribing a pain pump and had decreased her pain medication. ECF No. 9-16, PageID.1933-1934. Pierson prescribed a month's supply of medication until Knapp could be seen at a new pain clinic. *Id.* May 2020 office notes stated that Knapp was dismissed from her pain clinic because she would not accept the decrease in her pain medication. *Id.* at PageID.1930. She was prescribed a month's supply of medication for 60 days until she could go to another pain clinic. *Id.* Knapp again asked Pierson's office to refill her pain medications in July 2020. ECF No. 9-16, PageID.1927. Knapp claimed she was never told that the last order limited the prescription to 60 days, and office staff noted, "Veracity of [patient] is questionable." *Id.* (cleaned up). Pierson again refilled Knapp's pain medications in August and September 2020 but told her that if she still failed to make an appointment with a pain clinic, they would wean her from the narcotics. *Id.* at PageID.1917, 1923.

Knapp had a partial lumbar laminectomy at L3-L4 and placement of a coflex at L4-L5 and L5-S1 in September 2020. ECF No. 9-18, PageID.2125-2126. After surgery, Knapp reported pain in her lower back and numbness and tingling in her legs, but she moved her extremities well and could walk independently in her room with a walker. ECF No. 9-17, PageID.2070, 2086. Knapp went to the emergency department twice in late 2020 complaining of pain and increased drainage from the surgical site. ECF No. 9-4, PageID.501-502, 570-571. Those visits showed some improvements in mobility. In October 2020, Knapp had normal range of motion in her neck and back, tenderness at the surgical site, no sensory deficits, and antigravity strength in her legs. *Id.* at PageID.571; ECF No. 9-5, PageID.573. In November 2020, Knapp moved her extremities well and had normal range of motion in her cervical spine, no spinal tenderness, and normal sensation and strength. ECF No. 9-4, PageID.505.

After the second emergency visit, Dr. Yin diagnosed migration of the coflex and wound dehiscence and performed a revision surgery. ECF No. 9-17, PageID.1963-1964, 2045. Consistent with the ALJ's analysis, the cited medical records after that surgery show improvement. During her hospital recovery, Knapp walked with a steady gait and tolerated the activity well. *Id.* at PageID.1977-1978. In November 2020, pain specialist

11

Siva Sripada, D.O., observed that motor function in Knapp's legs was 5/5 and stated, "Overall she appears to be doing better." ECF No. 9-20, PageID.2243. In December 2020, Knapp reported more back pain that radiated into her legs, but motor function in her leg was still 5/5, and she moved her arms and legs "with full strength." *Id.* at PageID.2245. During a December 2020 emergency department visit, providers noted that Knapp was moving her neck freely, could walk from her bathroom to her bed without assistance, and had normal range of motion, no spinal tenderness, and normal strength in her arms and legs. ECF No. 9-4, PageID.457-458.

Through early 2021, Knapp complained of neck and low back pain that radiated into her arms and legs. *See, e.g.*, *id.* at PageID.237, 285, 360-361, 386; ECF No. 9-3, PageID.324-325; ECF No. 9-20, PageID.2237. But a January 2021 physical examination in the emergency department showed that Knapp moved her neck freely; moved her arms and legs without difficulty with 5/5 strength; walked with an antalgic gait but did not require assistance; and had normal range of motion, no tenderness in the cervical or thoracic spine, and some lumbar tenderness. ECF No. 9-3, PageID.286.

The ALJ also considered medical opinions by state agency physicians Myung Ho Hahn, M.D., and Alyce Metoyer, D.O. ECF No. 9-2,

PageID.109. Both doctors determined that Knapp could perform light work but could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; could never climb ladders, ropes, or scaffolds; and should avoid exposure to hazards. ECF No. 9-6, PageID.772-773, 838-840. The ALJ found these opinions partially persuasive because Drs. Hahn and Metoyer did not consider Knapp's surgeries in late 2020, which supported a restriction to sedentary work. ECF No. 9-2, PageID.109.

Knapp argues that her longitudinal medical records document physical limitations, pain symptoms, and no improvement of her condition. ECF No. 13, PageID.2287-2290. In support, she includes four pages of bullet points summarizing the medical and surgical treatment for her continued complaints of neck and back pain.[6] *Id.* She also cites her providers' objective findings of tenderness, decreased muscle strength, and decreased range of motion. *Id.* at PageID.2295-2297.

The cited records do show that Knapp had cervical and lumbar tenderness, motor weakness, and reduced range of motion. *See, e.g.*,

---

[6] The bullet pointed summary is singled-spaced and covers about four pages, while E.D. Mich. LR 5.1(a)(2) requires that the text of papers be double-spaced "except for quoted materials and footnotes." Knapp's counsel's violation of that rule is not just a technicality; the single-spacing over multiple pages causes a greater strain on the eyes than double-spacing.

ECF No. 9-3, PageID.237-238; ECF No. 9-5, PageID.726; ECF No. 9-12, PageID.1542. But as discussed above, the ALJ correctly found that Knapp's range of motion and strength generally improved after her surgeries. *See* ECF No. 9-3, PageID.285; ECF No. 9-4, PageID.457, 498, 565; ECF No. 9-20, PageID.2240, 2243, 2245. And some records Knapp cites show that her weakness is mild, as her strength was rated at 4/5. *See* ECF No. 9-3, PageID.237-238; ECF No. 9-5, PageID.726. In any event, Knapp does not offer any evidence showing how these limitations conflict with sedentary work. And when, as here, the ALJ's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286.

### 2.

Knapp also argues that the ALJ failed to give adequate weight to the opinion of consulting occupational therapist Brittany Partridge, OTRL. ECF No. 13, PageID.2283, 2293-2297. ALJs must assess the persuasiveness of all opinions from both treating and non-treating sources by considering several factors, the most important being the opinion's supportability and consistency with the record evidence. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(a). Under the supportability factor, the more relevant

14

"objective medical evidence and supporting explanations presented by a medical source to support his or her medical opinion," the more persuasive the medical opinion will be. § 404.1520c(c)(1); § 416.920c(c)(1). An opinion that is more consistent with the evidence from other medical sources and nonmedical sources is also more persuasive. § 404.1520c(c)(2); § 416.920c(c)(2).

In December 2019, Partridge examined Knapp and found that she could function at a sedentary level, except that she could only work for up to six hours and nine minutes per day with alternating sitting and standing and could not lift or carry ten pounds, walk occasionally, sit for a total of five hours and 17 minutes, and sit for two hours at a time. ECF No. 9-13, PageID.1674. Partridge also found that Knapp could tolerate occasional bending, fine coordination, and simple grasping; could frequently reach above shoulder level; and could not crawl, firmly grasp, kneel, squat, climb stairs, or walk. *Id.*

The ALJ found this opinion partially persuasive because it was based on an examination and Knapp had cervical spine surgery shortly before the evaluation. ECF No. 9-2, PageID.109-110. But since the opinion was from December 2019, the ALJ reasoned that updated medical records showed "additional surgical intervention and at times, the claimant appeared overall

to be doing better." *Id.* at PageID.110.  The ALJ cited the recent records showing that Knapp moved her arms and legs with full strength and concluded that the longitudinal record supported a restriction to sedentary work.  *Id.*

The evidence discussed above supports the ALJ's conclusion that the longitudinal records differ from Partridge's assessment.  And Partridge admitted that the RFC report was unreliable, as it did "not represent a true and accurate representation of Ms. Knapp's overall physical capabilities secondary to unreliable pain reports."  ECF No. 9-13, PageID.1669.  Partridge explained that Knapp's "movement patterns did not correlate with reported pain symptoms."  *Id.*  Thus, the ALJ's decision not to accord Partridge's opinion more weight is supported by substantial evidence.

### IV.   Conclusion

The Court **RECOMMENDS** that Knapp's motion for summary judgment (ECF No. 13) be **DENIED**, the Commissioner's motion for summary judgment (ECF No. 16) be **GRANTED**, and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 13, 2023

### **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 13, 2023.

                                                s/Marlena Williams
                                                MARLENA WILLIAMS
                                                Case Manager